Mr. Beckerman. May it please the Court, excuse me, I'm fighting my voice a little. I'm Dale Beckerman. I'm here on behalf of the appellant, Hudson Specialty Insurance Company. This is a de novo review of a summary judgment granted in an insurance coverage dispute by the district court. The action arises out of an auto accident, but this is not a dispute about the car policy on the car. This is a dispute about a business policy. That policy afforded the insured, an LLC named Brash Tygr, coverage for the use of a non-owned car in the course of its business. The facts are set out, I think, pretty elaborately in the briefs, and I don't know that it helps a lot to recount them here. I think what's important from our perspective and my client's perspective is that there was no evidence that Tyler Roush, the driver on the day of the accident, had any employment role with Brash Tygr. He didn't. He hadn't worked in a Sonic since 1991. The accident was like 2009. There was no evidence that the trip he started that day had any relation to his involvement or his relation to Brash Tygr. There was no evidence that the request that he take the bank bags at the Carrollton County Bank and Trust, or his agreement to do so, had any relation to his involvement with Brash Tygr. He left the bank and headed for the post office, and in all of this, he was doing solely personal errands for his mother, Sharon Roush, the co-owner of the car, and at the bank, he had deposited her check, her paycheck. She and her husband ran the Sonic and Brash Tygr, but he deposited her check, and then she'd given him a couple of letters to mail, and he left there, and he went to the post office. There was no evidence that his role as a managing member of Brash Tygr had anything to do with the trip from the bank to the post office where the accident occurred. In every step, he was simply doing a favor for his mother, and there's simply no contrary evidence in the record. All of this evidence was actually developed in the circuit court discovery in the damage suit, and we didn't even really rediscover it in the declaratory judgment action proceeding. We simply used the record. So nowhere in the record was there any evidence that the fact he was a managing member of Brash Tygr had a thing to do with the trip he took, the circumstances of the trip, and in that respect, we think the case looks very much like the Peerless versus Rader case or the Wimes case, and we believe that the district court simply made a legal error in the test that she applied because she failed to look at the circumstances that underlie the trip that he took that day. As I was reviewing for the argument, I looked at one of the cases we cited is Maryland Casualty versus Huger. That involved a priest who was a member at the time of the Archdiocese of Kansas, I'm sorry, St. Louis, and he attended an anti-abortion rally. He actually engaged in some illegal activity at the rally, and that was a factor, but he attended an anti-abortion rally. The church, there was, and a police officer was hurt at the rally and got a judgment against him and then tried to recover under the insurance of the diocese, and the archdiocese policy provided coverage for a priest, somewhat similar to what goes on here, if the priest was in the scope of his priestly duties, and an interesting parallel between the two cases. The priest was a priest 24-7. Likewise, Tyler Roush was a member of the, a managing member 24-7, but the court went way past that, and there was evidence, of course, that the rally, an anti-abortion rally, aligned with the theological teachings of the church. The church acknowledged when a priest speaks, a priest speaks for the church, but the church, but there was no evidence that the church put him there, asked him to go, or that it was an assignment his of any sort, and as the court was going through the evidence and through the law, looked at a Missouri Law Review article, and that used the phrase, and asked the question, whether the trip was by virtue of the relation between the alleged master and servant, or in this case, Tyler Roush and Brash Tiger. Was it by virtue of that relation? And, and, I think, except it seems to me the district court's analysis is, it became, for the, for the convenience and necessity of Brash Tiger when he left the bank. But that, I think that's the wrong question. Why, why, why? Because it. In the course of, that's the, that's the underlying, that's the driving phrase here, right? That, that is the critical policy language, and that doesn't ask the question whether he had authority to do the act, it asks whether he was in the course of the business of Brash Tiger, and to answer that question, I think that the. Well, the court says yes, because he's taking bags for, you know, at the request of the bank, consistent with prior practice vis-a-vis Brash Tiger, he's taking bags. But I. To Brash Tiger. I do. As a, as a managing agent of Brash Tiger. But I think the problem with that analysis is that the question of whether the, he was in the course of the business is, has to be answered in terms of the broader circumstances of the trip. I think Rader tells. Why? Because that's. What case says so? I mean. I think, I think that, I think that the Rader case tells us that. I think that the Wines case tells us that. There are times when a personal venture, that this is Wines, for example, the, where the salesperson stops and fuels his vehicle, where a personal venture, purely personal, has some incidental benefit for the master or the other party, but that does not make the trip in the course of that relation. And I think that the phrase that the, that the Court of Appeals looked at in, in Huger, what was the trip by virtue of the relation, really encapsulates well the question that the Missouri Court. I think it's Missouri Court of Appeals, Your Honor. Yeah. So it's, it's, they overruled Corp? I, I, I'm sorry, I didn't. They overruled Corp, which was the Supreme Court of Missouri case that, that the District Court relied on? I don't. No. No, I'm not, I'm not. So how do you draw the line between Corp and Wines? I don't, I don't think that the, any Missouri case directly supports the way that the District Court got to this. I have to say that. I think that. Well, yeah, because of this operating agreement, but, but look at the, you know, that, I'm not sure the Court didn't overemphasize that, but how do you have to, if you can't distinguish Corp, forget Wines. I mean, that's, that's a lower, that's a lower Court. I don't, but I. You've got a federal court in diversity here where we only look to the big, the big, the big players. I fully understand that, but I, but again, that case didn't involve in any sense the facts we have here. Well, yeah, of course it did. It was a mixed purpose trip, primarily purpose, personal. But, but again, it started with the, with, with, with the purpose, I believe. This one never. Not till he got to the, not till he got, not till he picked up his paycheck. But I think that was part of the mission from the very beginning. Okay, I mean, I agree they're distinguishable, but you're, you're not. But, but I think that was my challenge a moment ago, and I think they are distinguishable for the very reason that he didn't start the, Tyler Rauch did not start the trip with the thought of performing any service that related to Brash Tiger. He was doing favors for his mother, and the taking of the bank bags was a favor to his mother. And that was, and, and, and it was, it was expected he would return them at their home, and it was, there, there was no evidence that the management agreement had, or operation agreement had a thing to do with the request that he take them. And so from the beginning, and this is where I think Huger kind of helps us, because again, the priest is a priest 24-7. But the question is what, how did he get there? What started him there? But more importantly also, the fact that he had the bags in the car had not a thing to do with the decision or the trip from the bank to the post office, where this accident actually occurred. If we're going to follow this course, when he, he, he, he, he was not doing a thing at that point in terms of motivation. What if he'd gotten, what if he'd gotten to the, just as he got to the bank, he got an emergency phone call from Brash Tiger saying, God, we're out of cash, get some for us. That might change it, Your Honor, but it didn't happen. Might. You know, I, I mean. Is there any doubt? I don't, I, I, I would have to say probably not, but. Okay, well. So here the bank employee says, would you take these? Yeah, it, the, the bank, that's the case, to your mother, you know, knowing that he's come in to do banking business for his mother. I do have, and I wanted to point out, there's also a serious notice issue here at the time that the Brash Tiger and those defendants refused to accept a defense under reservation. Brash Tiger was not even a party to the lawsuit and was not, it was the subject of a motion to amend and re-add it, but it, and the policy did require prompt notice of all pleadings and papers, and it was only after that, and without any more notice to my client, that the Brash Tiger was again made a party and a judgment was taken against it. And that all happened in one day. And the prejudice was? The prejudice was a judgment was taken against Brash Tiger when, when Hudson did not even know the Brash Tiger was going to be a party. And the, and, and had they known, had they had notice, what would have we speculated on that, but they, but, but the fact is they weren't told and that's a violation. Your client was the, was the victim of a collusion, which is not that uncommon, but I don't think it's, I don't think your notice argument gets at it. Well, I come back to, I still think if we look at cases like Maryland Casualty, I believe that the district court took the wrong course in equating the, or making, kind of wrapping the, the operation agreement around one simple act and equating that with being in the course of a company's business. Same as I have the authority to carry a briefcase of my law firm, that doesn't mean my every hour is the law firm's business. And I think this does have a risk of, not only is it just wrong under the policy, but it really expands the liability of a business without any control over the business. And of course, there's no evidence of control here. My light has gone on, so I will sit down. Just your warning light. I understand, but I, I try to reserve three or four minutes and I, I will continue to do that. Thank you. Thank you. Mr. Blanton. May it please the court. Michael Blanton for Defendants and Appellees. I'd like to start with a point that hasn't been addressed yet. I don't believe appellant has provided this court with the record it needs to review appellant's points of error. Appellant's appeal is from the court's order of May 4th, 2012, which granted summary judgment to defendants in the underlying action. And that judgment is based in part upon a hearing that was held on April 13th, 2012, and was held at the specific request of the district court. And the district court indicated in its minute entry after that judgment was entered that, quote, additional facts were presented to the court with arguments and evidence to be relied on, close quote. Appellants have not ordered that transcript or provided that transcript to this court. As this court's well aware, federal rule of appellate procedure 10B2 states that if the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion. Appellant hasn't done that. Now, we don't have the evidence or we don't have the argument transcript? I don't think you have the evidence. Because, again, in the court's minute entry, it indicates that, quote, additional facts. Was there testimony? I thought this was summary judgment. It is summary judgment. And, again, I wasn't trial counsel. But going by the court's entry, the court states, quote, additional facts were presented to the court with arguments and evidence to be relied on. That's what the court states in its minute entry. That's how it describes the hearing. And this court has not been provided with a transcript of that hearing. So I, first of all, I respectfully suggest that appellant has simply failed to provide this court with the record that it needs to consider appellant's points on appeal. However, if this court chooses to consider appellant's points despite the fact that it doesn't have the full record, I would suggest that this court should next look at the issue of collateral estoppel. And I think it's important to look at that in context. Obviously, in this court, in this case, the district court held that there was coverage under the policy. Well, okay. I think on these facts, collateral estoppel would be about as unjust as anything you could do. And it's a justice principle. If I could just briefly hit upon what Missouri courts say about that issue. Well, I'd rather have you, well, you can argue any way you want, but I can tell you, you can't, you haven't got them, couldn't have a more negative audience than your collateral estoppel to me. Message heard, I will move on to. I can't speak for my colleagues. I will move on to the primary issue of the court's holding in this case. The parties agree, there are two documents in this case that are at issue, the insurance policy and the operating agreement. The parties agree that the construction of those instruments is a legal issue and the district court properly construed those instruments. The operating, or excuse me, the policy provides coverage for non-owned autos when the auto is used, quote, in the course of your business. So in the course of Brash Tiger's business. And the agreement provides that managing members, and there's no dispute in this case that have authority to, quote, do all things necessary or convenient to carry out the business and affairs of the company. But that doesn't address whether it was in the course of. The operative, the operative term here, it seems to me, is not convenience and necessity of the business, it's was Tyler acting during the course of the business. That's the question, and I, and it seems to me that the district court did not pay enough attention to the policy language, which is the governing instrument, not, the operation agreement is not the governing document here, the policy is. It doesn't govern wholly the question of coverage, but I think it speaks to the nature of Tyler's authority and affects the issue of whether he was acting within his authority. I mean, it's important. That's not a question. Well, Hudson argues in this case. This whole thing is a deflection of, of, off the, off the main, what should be the main event. I, and, and. Corp could not be, could not be more distinguishable on, in the course of, attempting to interpret course of, because there, it was not, not only did the chap leave on a partly personal errand with a partly business purpose, he'd been told by his foreman to do that, and he had done it customarily. So for the district court to say, this is corp, period, summary judgment granted, just doesn't, you've got to do better for a little nap. Maybe that's why you don't even cite corp in your brief. Well, with respect, I, from my perspective, we're responding to the argument that Hudson made below, which is that Tyler did not have authority to be acting on behalf of Brash Tiger, and I think that's clearly incorrect. If this court accepts that he, he absolutely had authority, and there's no question about that. I'm, I'm happy to move on to the question of the nature of the specific activity. I don't care whether he would have been authorized for ex, to take, for example, my emergency call that I, the hypothetical. Okay. You know, he get, you know, dad or mom calls, or, or the manager of the restaurant calls and says, we got to have more bags, and you're out, you're on the way to the bank, would you get some? In that case, I, I. Obviously, he has authority as a managing agent to do that. I absolutely agree, but Hudson denied that was a fact below, and that's. Why don't you address their argument on appeal? Their argument on appeal is that whether he was in the course of business is a fact issue. I don't think the facts that are pertinent to the determination of the district court here are in dispute. No, he's not saying the fact. Well, all right. I don't think they're in dispute. The type of facts that they point to are that Tyler did, had not worked at SONIC. Yeah, those aren't in dispute, but whether he's in the course of employment is the question. Oh, you're saying it's a legal question either way? I'm saying the facts that are pertinent to that issue, I don't believe are in dispute. I mean, he, he indisputably was transporting the bank bags at the time of the accident. It's whether he's in the course of a business, though. Is that a fact issue itself? I, I think that's a legal issue that depends upon the facts that the court considers, how I would view that. So you think either it's judgment for you or judgment for them? It's a legal issue. Either you win judgment or they win judgment because of the underlying facts. It's a legal issue that depends on the facts. I believe that the facts that the court relied upon in its order in this case were in dispute. I mean, relied upon the fact that Tyler was transporting the bank bags at the time of the accident, that the bank bags were bank bags that were used by Brash Tiger through its restaurant, SONIC, and that because of that, he was engaged in, he was in the course of Brash Tiger's business at the time of the accident. The U.S. Supreme Court has, has written many times on whether, whether a person is an employee or an independent contractor. And they've gone to the restatement, I guess, of agency and said it's like a 20-factor test and it's a question of fact and it's for a jury. Why isn't this course of business question the same? If we're moving into the territory of agency, again, if we're talking scope of agency, that may be a bit, in terms of the question of whether he's an agent. Whether he's the employer or an employee of the employer in this, for purposes of applying the policy, doesn't seem to me to be very relevant. I may have misunderstood your question, Your Honor. It's got to be in the course of business, whether it's the owner, you know, of a sole proprietorship, or a pizza delivery boy, it doesn't seem to me to matter. I agree, but Hudson's argument seems to be that it can only be in the course of business if the original purpose of the trip was to pick up bank bags. And I don't think that's at all what the cases say. I think that picking up the bank bags was clearly within the course of Brash Tiger's business. What cases say the original purpose isn't relevant? I mean, obviously it's relevant. It isn't dispositive. I guess I'm going from the negative inference. What case says you get summary judgment even though the original purpose and the dominant purpose had nothing to do with the business? I'm looking at the negative inference from the cases. I'm not aware of a single case that says when determining course of business, you look at the original purpose of the trip, not the activity that was actually going on at the time of the accident. What was going on is he was on a personal errand to the post office. Is that relevant? I don't think so. Once he had custody of the bank bags, I think he's transporting the bank bags and he's taking the bank bags back to Brash Tiger, whether he's making other stops en route. And by the way, he's pulling out of the bank essentially when the accident occurs. But no, I think you can certainly argue about whether at the very beginning there was a business purpose when he had just gone to the bank. But after he picks up the bank bags and is transporting those bags for Brash Tiger. Everything he does then is in the course of business. Everything he does before he gives the bags to Mom. Under the facts of this case, I won't say there couldn't be a factual scenario where he went so far awry from delivering the bags to Brash Tiger. Well, how far awry does he have to go to make it a fact? If he decided to go visit a friend out of state and then came back and had an accident the next day, clearly that's well outside. We have nothing like that here. But why isn't he going to the post office enough if it's not the route that he would take home if he was strictly working for the company? Why isn't that analogous logically to the out-of-state trip? Because I think it's simultaneous activity. He is still transporting the bags at that time. If you look at the cases that Hudson relies on, such as Peerless or Rader. Parsons. I beg your pardon? Parsons is another case that's been cited. In those cases, the party was trying to argue that there was an isolated action that wasn't an ongoing activity. For instance, in Rader, I believe it was, it's actually the party had just testified that it was possible they had gone by the office that day and clearly the court said that wasn't enough. But in Wines, the argument was about making a stop to get gas in the car. It's not an ongoing activity. It's not somebody transporting the bags. They have the bags. The bags are being taken back to Brash Tiger. It's an ongoing activity. I don't think the activity has to have one nature from that point on. I don't think he's either on a personal errand or transporting the bags. I think it can be both. And he clearly is transporting the bags at that point. And I think the court correctly found that he was acting in the course of Brash Tiger's business at that point in time. How about this Parsons case? Are you familiar with that? Where the woman picks up the medical test kit? I do not recall that one off the top of my head, Your Honor. I apologize. I know Rader and Wines were the two that seemed to receive the primary emphasis in Hudson's brief and I'd be happy to address those further if you'd like. If I could turn briefly to the notice issue. Hudson very carefully crafts its argument on the notice issue. It argues that Hudson did not receive notice by Brash Tiger. And it's careful to say it in that way because the fact is Hudson undeniably had notice of the claims against Brash Tiger. The counsel who had been retained by Hudson to represent its insured Brash Tiger, Mr. Jeffrey Seuss, had been provided with a copy of the Second Amendment petition. Mr. Seuss actually had the Second Amendment petition in his possession at the time he mediated the case on behalf of Brash Tiger. So there's no, and as a matter of fact, Hudson in its own brief admits that Mr. Seuss, that the Second Amendment petition had been provided to Mr. Seuss before controlling the defense in the case, that Mr. Seuss was still representing the insured. So there's no question that Hudson had notice. And as this Court is presumably aware, in Missouri it's a substantial compliance standard and it's a standard that's highly geared to the issue of prejudice. Missouri courts have repeatedly held that a notice provision in an insurance policy should not be used to deny coverage on a mere technicality. The issue is whether the insurer had notice. In this case, the insurer clearly had notice. And I think it's important to point out that there's no question there was no prejudice because the claims we're talking about are the very same claims that have been at issue all along. Now, as the facts point out, Brash Tiger was dismissed. You're running out of time and you're arguing a point that was almost conceded by opposing counsel on the prejudice side. I have to come back. I can't tell, looking again at your brief, and it's Judge Colleton's point, is it your position that summary judgment had to be granted to one side or another on the course of business issue because it's a question of insurance policy interpretation? It's my position that the district court properly granted summary judgment. I know that. It's based upon the facts that it relied upon in its judgment. No. I mean, if those facts, if it didn't. Counsel, wait a minute. In your brief, you start point two. The district court did not err in denying plaintiff's motion for summary judgment. Hudson argues the district court erred, one, in concluding that Tyler Rash was acting in the course of business, and two, notice provision issue. And then you spend 15 pages on the notice provision issue. So now, again, do you have a position as to whether this is not a question of facts? There is no role for a jury to play in deciding the course of business issue under this insurance policy, up or down, or I don't have a position. I do, but it takes me a second to explain, Your Honor. I think it depends on the scope of the evidence that's significant. I think Hudson's argument relies upon a much broader universe of facts. And so for the court to grant summary judgment to Hudson, that much broader universe would have to be in dispute. It's a jury question, assuming that someone's demanded a jury, or it has to be tried. If the facts that Hudson relies upon are true, it's a trial. If the material facts are in dispute, it's an issue for trial. Yes or no? Yes or no. If, that who, which material facts, Your Honor, the facts that Hudson relies upon? If there are material, if we conclude there are material facts on the question of whether Brash's business, then we say trial, or we say what? If the court believes there are material facts that were pertinent to the court's analysis that are still in dispute, then yes, I think that would be a trial issue. What if we just, what if we say all these facts that you've talked about are undisputed, you know, where he was going and why he was going and all the things you list in your briefs. Are you saying that one side or the other must win on those facts if there are no facts disputed, or are there some scenarios in which even when the facts are undisputed, a jury gets to decide course of business? That's what I'm wrestling with. Maybe you think in this case you should have won, but are there some scenarios where the facts are in the middle and you think it would go to a jury, or is it always one side or the other? I think I am looking upon the strength of evidence. I mean, to me, if all of the facts that we've discussed are undisputed, then I think the court was firm in its ground. I know you think that, but let's say the facts were more murky. Say there were other facts that cut against you. Could it go to a jury then, or would it just be one side or the other wins by the court? In a scenario where there were other facts that we haven't discussed, yeah, it could be a jury issue. Okay. That's a position. Thank you. What's your position on it? My position. The question of whether facts are material is a legal issue. That's for the court to look at the various facts we've presented and determine which are material and which are not. If there is a dispute, it's a jury question. Well, what do you want? Do you want a trial on whether there was course of business? My view is that the facts were undisputed, and my client was entitled to summary judgment. And I believe that the right result is to reverse and remand with instructions to enter summary judgment for my client. On the other hand, if the court believes there are disputed material facts, then I would be glad to see the court reverse and direct us to have a trial. Well, the question is whether course of business is itself a fact. I think that is a conclusion of fact and law based on the language of the policy and the undisputed facts that the court finds material. But I don't understand the answer. You said it's a question of fact and law. I'm trying to understand whether that ever goes to the jury on that ultimate question. Oh, I believe it can't. I believe it can't. Whether he was in the course of business on undisputed facts, the course of business question still goes to the jury. But the case law is all over the map, including the U.S. Supreme Court, on whether a mixed question of law and fact is a jury issue. So do we have any guidance from the Supreme Court of Missouri on this question in your view? I don't think of any as I stand here. I think, Judge Colleton, if I may, the part of the problem, and we do think that the district judge drew some inferences and found some facts, perhaps, as she arrived at this. But if I may, I suppose the question is, once the parties say, here are the undisputed facts, is, can the court reasonably draw different inferences from those, perhaps? And if that's the case, perhaps we need to ask a jury to do that for us. But if the facts are undisputed, and I believe all point one way, then I think that it is susceptible of- Well, that's, you know, we all, that's, everybody agrees with that. If the facts are all one way, that's not what we're talking about. Ultimately, I think the course question is a legal issue. Your brief says on page 28, whether Tyler Roush was in the course of Brash Tiger's business was a fact issue. Well, I- So that made me think you were saying that issue itself is a fact issue that goes to the jury. I think it's a, and I'm, maybe we weren't, maybe we didn't say it right. I think it is ultimately a legal conclusion driven by the facts that the court has presented. The transcript, I attended that hearing, no evidence. None at all. No affidavits, no testimony. It was argument based on the record we'd made and the record you have. How do we know that? I can get you the, I would be glad to supply the court the transcript. I did not realize the document or said there was evidence. I will tell you that there was, we argued based on the record that had been made that is in the appendices the court has. And for that reason, we didn't think this court needed argument that was presented to that court. We were coming here to argue the case. Very good. Thank you for your time. Appreciate it. Thank you, counsel. Case has been well, well briefed and argument's been helpful. And we will take your time. Well.